**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

VITO GALLICCHIO,

                                 Plaintiff,                                          24 Civ. 8135 (PMH)

                    -v-

JAYNE VANDERHEY-WRIGHT; JACOB KNIBBS;
and BRYAN WALLS,

                                 Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Defendants' motion to dismiss is denied without prejudice for failure to comply with the Court's Individual Practices concerning motions to dismiss. *See* Rule 4(C)(i) ("In the case of a motion to dismiss, the parties shall exchange 2 sets of premotion letters."); Rule 2(C) ("In *pro se* cases, the party contemplating a motion shall still file a pre-motion letter[.]").

SO ORDERED.

_____
Philip M. Halpern
United States District Judge

Dated:  White Plains, New York
        September 8, 2025

A

– Of Counsel –

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ..................................................................................1

FACTUAL BACKGROUND.....................................................................................2

    I.    Plaintiff's Allegations .................................................................................2

LEGAL STANDARD...............................................................................................3

ARGUMENT ............................................................................................................3

    I.    Plaintiff's Biven Claim Should Be Dismissed Because He Failed to Exhaust His Administrative Remedies .................................................................3

        A.  Plaintiff Failed to Complete BOP's Four-Step Administrative Remedy................3

        B.  Plaintiff's Failed to Properly Exhaust His Administrative Remedies Cannot Be Excused ..........................................................................5

    II.    Plaintiff Lacks a Biven Remedy for His Claims............................................6

        A.  Limited Availability of Bivens Remedies.................................................6

        B.  Plaintiff's Claims Arise in a "New Context"............................................9

        C.  Special Factors Counsel against Recognizing a New Bivens Context .................12

    III.    Plaintiff Has Failed to State a Claim..........................................................14

    IV.    Defendant Vander Hey-Wright is Entitled to Absolute Immunity ...............16

CONCLUSION.......................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

**Case**

*Arar v. Ashcroft*,
 585 F.3d 559 (2d Cir. 2009).......................................................................... 9, 13

*Ashcroft v. Iqbal*,
 556 U.S. 678 (2009)............................................................................................ 3

*Beharry v. Ashcroft*,
 329 F.3d 51 (2d Cir. 2003)................................................................................. 6

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)............................................................................................ 3

*Bennett v. James*,
 737 F. Supp. 2d 219 (S.D.N.Y. 2010)................................................................ 6

*Bettis v. Grijalva*,
 No. 21 Civ. 7505 (GWG), 2023 WL 4141869 (S.D.N.Y. June 23, 2023)................. 11, 12

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
 403 U.S. 388 (1971).......................................................................................... 1, 7

*Booth v. Churner*,
 532 U.S. 731, (2001).......................................................................................... 4

*Bravo v. U.S. Marshals Service*,
 684 F. Supp. 3d 112 (S.D.N.Y. 2023)...................................................... 11, 12, 13

*Brown v. Selwin*,
 250 F. Supp. 2d 299 (S.D.N.Y. 1999).............................................................. 15

*Cantor Fitzgerald, Inc. v. Lutnick*,
 313 F.3d 704 (2d Cir. 2002)............................................................................... 3

*Carlson  v. Green*,
 446 U.S. 14 (1980).................................................................................... passim

*Cruz v. Hastings*,
 No. 20 Civ. 4392 (VEC) (BCM), 2021 WL 4691375 (S.D.N.Y. Oct. 6, 2021) ................. 4

*Cuoco v. Moritsugu*,
 222 F.3d 99 (2d Cir. 2000)............................................................................... 16

*David v. Passman*,
    442 U.S. 228 (1979) ................................................................................................ 7

*Egbert v. Boule*,
    596 U.S. 482 (2022) ....................................................................................... 8, 9, 13

*Estelle v. Gamble*,
    429 U.S. 97 (1976) ................................................................................................ 15

*Farmer v. Brennan*,
    511 U.S. 825 (1994) ........................................................................................ 15, 16

*Fernandini v. United States*,
    No. 15 Civ. 3843 (KNF), 2019 WL 2493758 (Feb. 14, 2019) ........................ 11

*Gibson v. Goord*,
    280 F.3d 221 (2d Cir. 2002) .................................................................................. 4

*Goldey v. Fields*,
    606 U.S. 942 (2025) .................................................................................... passim

*Green v. Carlson*,
    581 F.2d 669 (7th Cir. 1978) .............................................................................. 11

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009) .................................................................................... 3

*Hill v. Curcione*,
    657 F.3d. 116 (2d Cir. 2011) ................................................................................. 3

*Hogan v. Fischer*,
    738 F.3d 509 (2d Cir. 2013) .................................................................................. 3

*Houston v. Capra, No. 20 Civ.*,
    2135 (VB), 2022 WL 748260 (S.D.N.Y. Mar. 11, 2022) ................................. 15

*Hui v. Castaneda*,
    559 U.S. 799 (2010) ............................................................................................ 16

*Lehal v. Cent. Falls Det. Facility Corp.*,
    No. 13 Civ 3923 (DF), 2019 WL 1447261 (S.D.N.Y. Mar. 15, 2019) ............ 15

*Lyerly v. Phillips*,
    No. 04 Civ. 3904 (PKC), 2005 WL 1802972 (July 29, 2005) .......................... 16

*Mena v. City of N.Y.*,
        12 Civ. 0028 (CM), 2014 WL 2968513 (S.D.N.Y. June 27, 2014).................................... 6

*Mendoza v. Edge*,
        615 F. Supp. 3d 163 (E.D.N.Y. 2022) ............................................................... 11

*Morgan v. Shivers*,
        14 Civ. 7921 (GHW), 2018 WL 618451 (S.D.N.Y. Jan. 29, 2018) ................................ 14

*Neal v. Goord*,
        267 F.3d 116 (2d Cir. 2001).......................................................................... 4

*Ojo v. United States*,
        No. 16 Civ. 4112 (MKB) (LB), 2019 WL 3852391 (Aug. 15, 2019).............................. 10

*Paulino v. Garcia*,
        No. 02 Civ. 209 (LAP), 2003 WL 21939703 (S.D.N.Y. Aug. 12, 2003) .......................... 4

*Porter v. Nussle*,
        534 U.S. 516 (2002).............................................................................. 3, 4

*Rivera v. Fed. Bureau of Prisons*,
        368 F. Supp. 3d 741 (S.D.N.Y. 2019)......................................................... 16, 17

*Ross v. Blake*,
        578 U.S. 632 (2016)................................................................................ 5

*Sabir v. Williams*,
        No. 20 Civ. 8 (VAB), 2020 WL 3489522 (D. Conn. June 26, 2020)............................. 10

*Schweiker v. Chilicky*,
        487 U.S. 412 (1988)................................................................................ 8

*Trammel v. Keane*,
        338 F.3d 155 (2d Cir. 2003)....................................................................... 15

*Turner v. Safley*,
        482 U.S. 78 (1987)................................................................................ 14

*Walker v. Schult*,
        717 F.3d 119 (2d Cir. 2013)....................................................................... 15

*Wickes v. Westfair Electric Co.*,
        No. 19-CV-10673 (PMH) 2021 WL 217318 n.4 (S.D.N.Y. Jan 1,2021) .......................... 5

*Wilkie v. Robbins*,
    551 U.S. 537 (2007) ............................................................................................. 9, 13

*Wilson v. Seiter*,
    501 U.S. 294 (1991) ................................................................................................. 15

*Ziglar v. Abbasi*,
    582 U.S. 120 (2017) ......................................................................................... *passim*

**Regulations**

28 C.F.R. § 542.10(a) .................................................................................................. 4

28 C.F.R. § 542.13(a) .................................................................................................. 4

28 C.F.R. § 542.14(a) .................................................................................................. 4

28 C.F.R. § 542.15(a) ............................................................................................... 4, 5

**Rules**

Federal Rule of Civil Procedure 12(b)(6) .................................................................. 1, 3

**Statutes**

18 U.S.C. §§ 3621(b) ................................................................................................. 14

42 U.S.C. § 233 ......................................................................................................... 16

42 U.S.C. § 1997e ...................................................................................................... 13

Defendants Jayne Vander Hey-Wright, Jacob Knibbs, and Bryan Walls ("Defendants")[1] respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff Vito Gallicchio's ("Plaintiff") Complaint, Dkt. No. 1 (the "Complaint" or "Compl."), pursuant to Federal Rule of Civil Procedure 12(b)(6) or Rule 56.

## PRELIMINARY STATEMENT

Plaintiff, proceeding *pro se*, brings this action against ten individual defendants pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971), seeking monetary damages. Plaintiff claims that beginning in December 2022, the prison administration's response to his requests for medical attention at Federal Correctional Institution Otisville ("Otisville") was inadequate and unconstitutional. Alleging that prison administration and medical personnel were deliberately indifferent towards his suffering, Plaintiff claims that these actions were a violation of his constitutional rights. As a matter of law, all of Plaintiff's claims must be dismissed for several reasons.

First, Plaintiff did not properly exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA") before raising his claims to this Court. Second, Plaintiff's claims are brought pursuant to *Bivens* and should be dismissed because they represent a new *Bivens* "context" and special factors weigh against expanding the *Bivens* remedy here. Further, even if a *Bivens* claim were recognized, the Complaint fails to allege facts showing that Defendants acted with deliberate indifference sufficient to give rise to violations of Plaintiff's Eighth Amendment rights.

Finally, Plaintiff's claims against Defendant Vander Hey-Wright cannot proceed because, as a Public Health Service ("PHS") official operating within the scope of her employment, she is

---

[1] This Court already dismissed Plaintiff's claims as to Warden Jamison and Dr. Linley because Plaintiff failed to indicate that they were "personally involved in the events underlying his claims." Dkt. No. 13, at 2.

entitled to absolute immunity.

## FACTUAL BACKGROUND

### I.    Plaintiff's Allegations

During all times relevant to the allegations in the Complaint, Plaintiff was an inmate at Otisville. Plaintiff alleges that in December 2022, he began to experience symptoms including weight loss, dizziness, loss of sensation, and chest pain. Plaintiff claims that while corrections officers alerted medical personnel to these symptoms, Defendant Vander Hey-Wright informed him that medical staff would not see him. Compl. ¶¶ 1–2. At some point in January 2023, Defendant Vander Hey-Wright saw Plaintiff and provided results of a blood test. *Id.* ¶ 3. Plaintiff alleges that his condition worsened on January 30, 2023, and that he was unable to speak or walk unassisted. *Id.* ¶ 4. Plaintiff claims that the following day, January 31, 2023, Defendant Knibbs placed him in the Secure Housing Unit ("SHU"), suspecting he had ingested narcotics, but did not take further steps towards his care or safety. *Id.* ¶¶ 6–7. Plaintiff claims that an incident report was filed reporting that he had consumed drugs or alcohol despite negative breathalyzer and urine tests and without receiving any medical care. *Id.* ¶¶ 5–7.

Plaintiff further alleges that for several months, medical staff confined him to his cell in the SHU for twenty-four hours a day, while his symptoms of dizziness, loss of appetite, and weight-loss worsened. Compl. ¶¶ 8-11. He contends that during this period he filed multiple "sick call" slips, lost about sixty pounds, and complained of his condition to corrections officers but did not receive sufficient medical treatment. *Id*. At some point several months into his confinement to the SHU, Plaintiff claims that he suffered a black-out in the presence of a corrections officer who alerted medical personnel. *Id.* ¶ ¶ 12-13. Plaintiff alleges that medical personnel expressed confusion as to the corrections officer's decision to press her emergency button and alert them. *Id.* ¶ 14. After being transported to Garnet Health Medical Center, Plaintiff claims that his medical

test results indicated that he had suffered a stroke and had an infection that had "set into" his heart. *Id.* ¶¶ 15–16.

## LEGAL STANDARDS

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must assert "sufficient factual matter . . . to state a claim to relief that is plausible on its face" if taken as true. *Iqbal*, 556 U.S. at 678. In making this determination, the court must accept well-pleaded factual allegations in the complaint as true and construe reasonable inferences in favor of the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). Simply offering "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). And courts need not give "credence to plaintiff's conclusory allegations." *Cantor Fitzgerald, Inc. v. Lutnick*, 313 F.3d 704, 709 (2d Cir. 2002).

Allegations in *pro se* complaints must be "construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d. 116, 122 (2d Cir. 2011)). However, the requirement to state a plausible claim for relief still applies, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are never enough, *Iqbal*, 556 U.S. at 678.

## ARGUMENT

### I.    Plaintiff's Bivens Claim Should Be Dismissed Because He Failed to Exhaust His Administrative Remedies

#### A.    Plaintiff Failed to Complete BOP's Four-Step Administrative Remedy Program

The PLRA requires that inmates exhaust available administrative remedies prior to filing suit in federal court. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). These exhaustion requirements

apply to inmate *Bivens* suits and encompass "all inmate suits about prison life, whether they involve general circumstances or particular episodes." *Id.* at 532. It is well established in this Circuit that where an inmate has not exhausted his available administrative remedies, dismissal is the proper course. *See, e.g., Gibson v. Goord*, 280 F.3d 221, 224 (2d Cir. 2002); *Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001). Furthermore, exhaustion is required whether a plaintiff seeks monetary or injunctive relief. *See Booth v. Churner*, 532 U.S. 731, 733–34 (2001).

To exhaust administrative remedies for *Bivens* claims, inmates must follow the four-step procedure set forth in the Bureau of Prison's Administrative Remedy Program ("ARP"). *See Paulino v. Garcia*, No. 02 Civ. 209 (LAP), 2003 WL 21939703, at *2 (S.D.N.Y. Aug. 12, 2003). Through this four-step process, inmates may "seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a).  In accordance with these regulations, an inmate must first present the issue informally to staff, and staff must attempt to resolve the issue. *See* 28 C.F.R. § 542.13(a). If the complaint cannot be resolved informally, the inmate may submit a formal written request to the Warden, on a designated form, within twenty days of the event that triggered the inmate's complaint. *See* 28 C.F.R. § 542.14(a). If the inmate's formal request is denied, the inmate may submit an appeal to the appropriate Regional Director of the BOP. *See* 28 C.F.R. § 542.15(a). A negative decision from the Regional Director may in turn be appealed to the General Counsel's office within 30 days of the date of the Regional Director's decision.  *Id.* "No administrative remedy appeal is considered finally exhausted until it is considered by BOP's Central Office." *Cruz v. Hastings*, No. 20 Civ. 4392 (VEC) (BCM), 2021 WL 4691375, at *4 (S.D.N.Y. Oct. 6, 2021).

As this Court has already observed, Plaintiff has not alleged any facts indicating that he has filed an administrative claim with a federal government entity for damages, nor that he has

exhausted the available administrative remedies. Dkt. No. 13, at 4. Indeed, Plaintiff alleges that he submitted numerous "'sick call' slips" as his health declined, but he notably does not allege that he exhausted the BOP's available administrative remedies. Compl. ¶ 10.

Moreover, a review of Plaintiff's administrative grievance history demonstrates that Plaintiff has failed to exhaust his administrative remedies.[2] Plaintiff filed an administrative grievance relating to alleged delayed medical care on September 26, 2023, which was denied. Declaration of Berthline Vincent, dated September 4, 2025 ¶¶ 10–11. But as Plaintiff's administrative grievance history also indicates, notwithstanding the denial of Plaintiff's grievance, Plaintiff did not pursue the next step of appealing this decision to the Regional Director at BOP, which is required under the ARP. *Id.* ¶ 12; *see also* 28 C.F.R. § 542.15(a). Accordingly, Plaintiff did not exhaust his administrative remedies relating to his claims and Plaintiff's claims must be dismissed. *Ross v. Blake*, 578 U.S. 632, 642 (2016).

**B.      Plaintiff's Failure to Properly Exhaust His Administrative Remedies Cannot Be Excused**

Plaintiff's failure to properly exhaust his administrative remedies cannot be excused.  The Supreme Court has explained that the PLRA contains only one qualifier excusing an inmate's obligation to exhaust his administrative remedies: where such remedies are literally or constructively "unavailable" to the inmate.  *Id.* at 643.  Administrative remedies are considered unavailable only if (1) the grievance process "operates as a simple dead end . . . with officers unable or consistently unwilling to provide any relief," (2) the process is "so opaque that it becomes, practically speaking, incapable of use," or (3) "prison administrators thwart inmates from

---

[2] The Court may take judicial notice of the records and reports of the BOP for the purposes of assessing whether Plaintiff exhausted his administrative remedies.  *See, e.g.*, *Wickes v.* Westfair Electric Co., 19-CV-10673 (PMH), 2021 WL 217318, at *3 n. 4 (S.D.N.Y. Jan. 1, 2021).

taking advantage of [the process] through machination, misrepresentation, or intimidation." *Id.* at 643–44.

Plaintiff cannot plead here that administrative remedies were not available to him. First, BOP records indicate that the Administrative Remedy Program was known and readily available to Plaintiff. Indeed, he has twice submitted grievances through the program. *See generally* Vincent Decl.[3] Second, there are no facts alleged in the Amended Complaint suggesting that prison administrators were thwarting his efforts to use the ARP or refusing to assist him. Finally, to the extent Plaintiff simply did not believe the ARP would work, that belief alone would not change the analysis. It is "well established that the PLRA's exhaustion requirement cannot be waived based upon the plaintiff's belief that pursuing administrative remedies would be ineffective or futile." *Bennett v. James*, 737 F. Supp. 2d 219, 227 (S.D.N.Y. 2010) (citation and internal quotation marks omitted); *accord Mena v. City of N.Y.*, 12 Civ. 0028 (CM), 2014 WL 2968513, at *6 (S.D.N.Y. June 27, 2014) ("A prisoner's perception that the facility's grievance program was ineffective or that the filing of grievances was futile is insufficient to negate the PLRA's exhaustion requirement." (internal quotation marks omitted)). As the Second Circuit has made clear, "courts may not read a futility exception into the statutory exhaustion requirement of the Prison Litigation Reform Act." *Beharry v. Ashcroft*, 329 F.3d 51, 57 (2d Cir. 2003). Accordingly, the Court should dismiss Plaintiff's *Bivens* claims for failure to satisfy the PLRA's exhaustion requirements.

---

[3] The Government has also previously explained in another proceeding brought my Plaintiff against the Government that he is required to exhaust his administrative remedies. *See* Memorandum of Law in Opposition to Petition for Writ of Habeas Corpus, *Gallicchio v. Pliler*, No. 22 Civ. 6643 (RA) (VF) (May 21, 2023), ECF No. 16, at 7 ("[B]ecause Petitioner has not adequately exhausted his administrative remedies or shown a persuasive reason for his failure to exhaust, the Petition should be denied."); *see also* Report and Recommendation, *Gallicchio v. Pliler*, No. 22 Civ. 6643 (RA) (VF) (May 12, 2025), ECF No. 20, at 10 (recommending that a petition for writ for *habeas corpus* be denied and dismissed because, among other reasons, "Petitioner has provided no basis for the Court to excuse his failure to exhaust his administrative remedies." (citations omitted))

II.    **Plaintiff Lacks a Bivens Remedy for His Claims**

A.    **Limited Availability of *Bivens* Remedies**

This Court has liberally construed Plaintiff's claims as brought pursuant to *Bivens*, premised on an alleged failure of employees of the BOP to provide adequate medical attention to Plaintiff. These claims must be dismissed because *Bivens* does not provide a right of action for Plaintiff's claims. In *Bivens*, the plaintiff alleged that federal agents entered his apartment without a warrant, used excessive force in arresting him, and proceeded to search the entire apartment, all without probable cause and, therefore, in violation of the Fourth Amendment.  403 U.S. at 389. The *Bivens* court created a cause of action against the agents for damages resulting from their violation of the plaintiff's constitutional rights, reasoning that Congress had not foreclosed a damages remedy in "explicit" terms and that no "special factors" suggested that the Judiciary should "hesitat[e]" in the face of congressional silence.  *Id*. at 396-97.

Since *Bivens*, the Supreme Court has implied a *Bivens* remedy in only two other circumstances. In the first, *Davis v. Passman*, the plaintiff alleged that she was wrongfully fired by her employer, a United States Congressman, because she was a woman, in violation of the Fifth Amendment.  442 U.S. 228, 230 (1979). In the second, *Carlson v. Green*, the plaintiff alleged that federal prison officials violated the Eighth Amendment by failing to provide timely, competent medical attention to her son, despite having been on notice of his medical conditions, resulting in his death.  446 U.S. 14, 16 n.1 (1980). And in the 45 years since *Green*, the Supreme Court has not recognized a *Bivens* remedy in any new context and "has consistently declined to extend *Bivens* to new contexts." *Goldey v. Fields*, 606 U.S. 942, 945 (2025); *see also Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017).

In *Abbasi*, the Supreme Court observed that there had been a "notable change in the Court's approach to recognizing implied causes of action" following *Bivens*, noting the consistent

"caution" expressed by the court on the occasions it has taken up the issue. *Id.* That caution has been driven by a number of considerations, chiefly, the separation-of-powers concerns raised when a court "determine[s] that it has the authority . . . to create and enforce a cause of action for damages against federal officials." *Id.* at 133-34 (noting the "substantial costs" and "economic and governmental concerns," as well as Congress's responsibility in determining such liability).

The Supreme Court again underscored these considerations in *Egbert v. Boule*, reiterating that a *Bivens* remedy is available only in extremely narrow circumstances and emphasizing that "creating a cause of action is a legislative endeavor" requiring the weighing of policy considerations—an endeavor "Congress is 'far more competent than the Judiciary'" to undertake. 596 U.S. 482, 491 (2022) (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988)). Further, the court cast doubt on the Judiciary's authority to imply causes of action generally, noting that such authority is, "at best, uncertain." *Egbert*, 596 U.S. at 491. The Supreme Court again reiterated these considerations in *Goldey v. Fields*, noting that "recognizing a cause of action under *Bivens* is 'a disfavored judicial activity.'" 606 U.S. at 942 (quoting *Egbert*, 596 U.S. at 491).

The Supreme Court has set forth a two-part inquiry that courts must conduct to determine whether a *Bivens* remedy may be available in any given case. First, the Court must determine whether the case presents "'a new *Bivens* context'—that is, whether the case 'is different in a meaningful way' from the cases in which [the Supreme Court] has recognized a *Bivens* remedy." *Goldey*, 606 U.S. at 944 (quoting *Abbasi*, 582 U.S. at 139). The Court narrowly defined the previous cases as: "[1] a claim against FBI agents for handcuffing a man in his own home without a warrant [in violation of the Fourth Amendment] [*Bivens*]; [2] a claim against a Congressman for firing his female secretary [in violation of the Fifth Amendment] [*Davis v. Passman*]; and [3] a

claim against prison officials for failure to treat an inmate's asthma [in violation of the Eighth

Amendment] [*Carlson v. Green*]." *Abbasi*, 582 U.S. at 140.  The Court explained:

> A case might differ in a meaningful way because of the rank of the
> officers involved; the constitutional right at issue; the generality or
> specificity of the official action; the extent of judicial guidance as to
> how an officer should respond to the problem or emergency to be
> confronted; the statutory or other legal mandate under which the
> officer was operating; the risk of disruptive intrusion by the
> Judiciary into the functioning of other branches; or the presence of
> potential special factors that previous Bivens cases did not consider.

*Id*. at 139-40.  The Court added that "even a modest extension" of an existing *Bivens* remedy "is

still an extension" that can present a new context for *Bivens* purposes.  *Id*. at 147.

Second, if the case is meaningfully different from previous *Bivens* contexts, the Court must

"ask whether there are special factors indicating that the Judiciary is at least arguably less equipped

than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Goldey*,

606 U.S. at 944 (quoting *Egbert*, 596 U.S. at 492; internal quotation marks omitted). The *Abbasi*

Court observed that "[i]t is not necessarily a judicial function to establish whole categories of cases

in which federal officers must defend against personal liability claims in the complex sphere of

litigation, with all of its burdens on some and benefits to others." 582 U.S. at 136. Among other

things, the Court instructed:

> [I]f there is an alternative remedial structure present in a certain
> case, that alone may limit the power of the Judiciary to infer a new
> Bivens cause of action.  For if Congress has created "any alternative,
> existing process for protecting the injured party's interest" that itself
> may "amount to a convincing reason for the Judicial Branch to
> refrain from providing a new and freestanding remedy in damages."

*Id*. at 137 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)); *see also Arar v. Ashcroft*, 585

F.3d 559, 572 (2d Cir. 2009) (a central consideration in a court's determination of whether a new

*Bivens* remedy should be implied is "whether there is an alternative remedial scheme available to

the plaintiff"). Applying this two-part inquiry, Plaintiff has not stated a *Bivens* claim because Plaintiff's claims present a new context, and special factors counsel hesitation against implying such a new *Bivens* remedy.

**B.      Plaintiff's Claims Arise in a "New Context"**

Plaintiff's claims fail because they differ from the few *Bivens* contexts recognized by the Supreme Court. It is unclear whether Plaintiff brings his claims as alleged violations of his Fifth or Eighth Amendment rights. But regardless of how the Court construes Plaintiff's claims, they do not fall within any of the three established *Bivens* contexts.

Plaintiff appears to allege a Fifth Amendment claim of medical negligence and deliberate indifference. None of the Supreme Court's cases recognizing a *Bivens* remedy implicated the Fifth Amendment regarding the provision of inadequate medical care. And while *Davis* recognized claims under the Fifth Amendment, these were implied under the equal protection component of the due process clause in the context of gender-discrimination. Indeed, courts within this circuit have limited the contexts in which such Fifth Amendment claims may be raised. *See Ojo v. United States*, No. 16 Civ. 4112 (MKB) (LB), 2019 WL 3852391, at *12 (Aug. 15, 2019), *report and recommendation adopted*, 2019 WL 4602823, at *12 (E.D.N.Y. Sept. 23, 2019) (finding that "purported Fifth Amendment violation for plaintiff's alleged unlawful arrest and [detention] … arise from wholly different factual circumstances than *Davis*, which related to gender discrimination in the workplace"); *see also Sabir v. Williams*, No. 20 Civ. 8 (VAB), 2020 WL 3489522, at *6 (D. Conn. June 26, 2020) (finding that "equal protection claim concerning prison commissary classifications is contextually distinct from a gender discrimination employment claim"). Plaintiff's claim, deliberate indifference through the denial of medical care in a correctional facility, is substantially different from the gender-discrimination context presented in *Davis*. Accordingly, any Fifth Amendment claims must be dismissed.

Plaintiff's purported Eighth Amendment claim fares no better. Although Plaintiff's claim is based on the same theory as the Eighth Amendment claim in *Carlson*, it nonetheless presents a new context. Indeed, even where a "claim of deliberate indifference shares similarities . . . with the claim in *Carlson* inasmuch as both . . . involve claims of deliberate indifference based on denial of medical care," "similarity alone can no longer establish an implied cause of action given that the Supreme Court has warned courts about declining to recognize 'even a modest extension' of *Bivens*." *Bettis v. Grijalva*, No. 21 Civ. 7505 (GWG), 2023 WL 4141869, at *4 (S.D.N.Y. June 23, 2023) (quoting *Abbasi*, 582 U.S. at 147).

In *Carlson*, an inmate was admitted to a prison hospital with an asthmatic attack. *Green v. Carlson*, 581 F.2d 669, 671 (7th Cir. 1978). He spent eight hours at the prison hospital in a "serious condition" that the prison staff failed to address in a litany of ways: there was no doctor on duty or called in; the chief medical officer responsible for the hospital performed no emergency procedures; the nurse on duty deserted the inmate for a time to dispense medication elsewhere in the hospital, and when the nurse came back, he attempted to use a respirator on the inmate, despite knowing that the respirator was broken. *Id.* The nurse then administered two injections of a drug contraindicated for a patient suffering an asthmatic attack, sending the inmate into respiratory arrest. *Id.* Two prison employees then "brought emergency equipment to administer an electric jolt" to the inmate, but "neither man knew how to operate the machine." *Id.* When the inmate was finally transferred to a hospital, he was pronounced dead upon arrival. *Id.*

Here, there are at least at least three aspects of Plaintiff's claim that distinguish it from *Carlson* and thus render a new context. First, a core feature of *Carlson* was that the inmate in that case died. As a result, no "alternative methods of relief [were] available" to the decedent's estate. *Abbasi*, 582 U.S. at 145. In contrast, in this case, the alleged misconduct did not result in Plaintiff's

death. *See also Bravo v. U.S. Marshals Service*, 684 F. Supp. 3d 112, 125 (S.D.N.Y. 2023) (noting that "significantly [plaintiff], thankfully, is still alive . . ." and concluding the case presented a new context); *Mendoza v. Edge*, 615 F. Supp. 3d 163 (E.D.N.Y. 2022) (same); *Fernandini v. United States*, No. 15 Civ. 3843 (KNF), 2019 WL 2493758, at *1, 10 (Feb. 14, 2019) (identifying a new context where plaintiff was denied medical care following an infection from a rat bite and "pinching pain" in his heart because plaintiff had not identified "serious injuries leading to death"), *report and recommendation adopted in part, rejected on other grounds*, 2019 WL 1033797 (S.D.N.Y. Mar. 5, 2019).

Second, the circumstances of the alleged indifference to Plaintiff's medical needs differ substantially from those presented to the Supreme Court in *Carlson*. *See Bravo*, 684 F. Supp. 3d at 124; *see also Bettis*, 2023 WL 4141869, at *6 (collecting cases and noting that "[c]ourts have routinely found variances in circumstances and severity render deliberate indifference claims different from *Carlson* and thus arise in a 'new context'"). Here, no Defendant affirmatively delivered grossly incompetent care to Plaintiff during an acute medical emergency, as in *Carlson*. *See Carlson*, 446 U.S. at 16 n.1. For example, no Defendant used medical equipment they knew to be "inoperative" on Plaintiff, or injected Plaintiff with "contra-indicated drugs." *Id.* On the contrary, Plaintiff alleges that when he experienced a medical emergency and suffered a black out, Otisville staff rushed Plaintiff to a medical center by ambulance. *See* Compl. ¶¶ 12-15.

Finally, Plaintiff's claims present a new context from *Carlson* because Plaintiff eventually received medical care. Plaintiff alleges that he was seen by Defendant Vander Hey-Wright and underwent a blood test prior to being placed in the SHU, Compl. ¶ 3, and that Plaintiff was eventually brought to a medical center to obtain medical treatment, *see id.* ¶ 15. Plaintiff's eventual receipt of medical care presents a new context that is different from *Carlson*. *See Bettis*, 2023 WL

4141869, at *6 (noting that the plaintiff's "eventual receipt of medical care presents a context different from *Carlson*").

### C.    Special Factors Counsel against Recognizing a New Bivens Context

Because Plaintiff's claims present a new context, this Court must consider whether special factors counsel against extending a *Bivens* remedy. Courts consider the existence of alternative remedial schemes, as well as the relative competence of the judiciary in weighing the costs and benefits of extending a damages remedy at this stage. *See Abbasi*, 582 U.S. at 136. In weighing these special factors, the Second Circuit has described the threshold for declining to extend the remedy as "remarkably low." *Arar*, 585 F.3d at 574. Here, several factors counsel hesitation.

First, recognizing a *Bivens* cause of action for Plaintiff's claims would have "systemwide" effects that courts may not be able to predict. *Egbert*, 596 U.S. at 493. In particular, where Congress has created "any alternative, existing process for protecting the injured party's interest," that itself may "amount to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Abbasi*, 582 U.S. at 137 (citation and internal quotation marks omitted). As relevant here, Plaintiff may seek redress from the BOP's ARP, the Federal Tort Claims Act ("FTCA"), or seek a writ of habeas corpus.[4] Indeed, courts within this district have specifically found the "existence [of the] FTCA to be a special factor counseling hesitation in extending *Bivens*." *Bravo*, 684 F. Supp. 3d at 126 (citation omitted). These alternatives are relevant even though they do not all allow for monetary damages, as they need only provide "some procedure to defend and make good on [the inmate's] position." *Wilkie*, 551 U.S. at 552. The existence of these alternative remedial structures alone suffices to limit the power of the Court to

---

[4] In fact, the Court liberally construed Plaintiff's complaint as attempting to assert FTCA claims against the Government but dismissed them because Plaintiff had not alleged facts demonstrating that he filed an administrative claim with a federal governmental entity. *See* Dkt. No. 13, at 4.

infer new *Bivens* causes of action under the Fifth and Eighth Amendments. *See Abbasi*, 582 U.S. at 137 ("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action.").

Further, Congressional involvement in the realm of prison administration counsels hesitation here. Fifteen years after *Carlson*, Congress enacted the PLRA, 42 U.S.C. § 1997e, "which made comprehensive changes to the way prisoner abuse claims must be brought in federal court." *Abbasi*, 582 U.S. at 148. The *Abbasi* Court found it "clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs," yet "d[id] not provide for a standalone damages remedy." *Id.* at 148-49. And more recently, the Supreme Court in *Goldey* acknowledged that "Congress has actively legislated in the area of prisoner litigation but has not enacted a statutory cause of action for money damages." *Goldey*, 606 U.S. at 944. This further counsels hesitation in creating a new *Bivens* remedy in this case. *See Morgan v. Shivers*, 14 Civ. 7921 (GHW), 2018 WL 618451, at *6 (S.D.N.Y. Jan. 29, 2018) ("Congress has legislated in the arena of prisoner rights, suggesting that the courts should not extend a damages remedy in this sphere").

Finally, Plaintiff's claims implicate questions of prison operation and prison healthcare administration. Not only has Congress expressly delegated broad authority to the BOP to make decisions regarding prison healthcare and stripped courts of jurisdiction to review challenges, *see, e.g.*, 18 U.S.C. §§ 3621(b), 4042(a), but courts have routinely found that the judiciary is ill suited to consider such questions of day-to-day prison administration. *See, e.g.*, *Turner v. Safley*, 482 U.S. 78, 85 (1987) ("Running a prison is an inordinately difficult undertaking . . . peculiarly within the province of the legislative and executive branches . . . . and separation of powers concerns counsel a policy of judicial restraint"). Indeed, a "*Bivens* action is not a proper vehicle for altering

14

an entity's policy," *Abbasi*, 582 U.S. at 140 (citation and internal quotation marks omitted) and extending *Bivens* to claims that challenge the administration of prison medical care would be both unduly burdensome and disruptive to the functions of federal correctional system and its officers..

Accordingly, special factors weigh against implying a *Bivens* remedy for Plaintiff's claims, and all of Plaintiff's claims should therefore be dismissed.

## III.    Plaintiff Has Failed to State a Claim

Even if Plaintiff were able to assert an Eighth Amendment deliberate indifference claim under *Bivens*, he has failed to plead the requisite elements.

To bring an Eighth Amendment claim, inmates must satisfy (1) an objective test that the actual deprivation imposed a "substantial risk of serious harm," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), and (2) a subjective test that prison officials had a "sufficiently culpable state of mind," *Wilson v. Seiter*, 501 U.S. 294, 297 (1991), which can be met with a showing of deliberate indifference. To establish an Eighth Amendment claim alleging inadequate medical care, a plaintiff must prove that acts or omissions occurred that were sufficiently harmful so as to evidence "deliberate indifference" to the inmate's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish the subjective component, a plaintiff must allege a "defendant acted with more than mere negligence" and that the prison official knew of, and disregarded, "an excessive risk to inmate health or safety."  *Houston v. Capra*, No. 20 Civ. 2135 (VB), 2022 WL 748260, at *8 (S.D.N.Y. Mar. 11, 2022) (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)).

Here, the Complaint fails to state a claim for inadequate medical care because the allegations do not satisfy the objective or the subjective prongs. First, a prisoner must allege an actual deprivation that is "'objectively sufficiently serious' such that the [detainee] was denied the 'minimal civilized measure of life's necessities.'" *Lehal v. Cent. Falls Det. Facility Corp.*, No. 13 Civ. 3923 (DF), 2019 WL 1447261, at *22 (S.D.N.Y. Mar. 15, 2019) (quoting *Trammel v. Keane*,

338 F.3d 155, 161 (2d Cir. 2003)). Plaintiff appears to allege that the decision of Defendants to not address his requests for treatment amounted to such a deprivation. But prison healthcare officials are not obligated to provide the best treatment available. Indeed, prison officials have "broad discretion in determining the nature and character of medical treatment afforded to inmates, and inmates do not have the right to the treatment of their choice." *Brown v. Selwin*, 250 F. Supp. 2d 299, 307 (S.D.N.Y. 1999), *aff'd*, 29 F. App'x 762 (2d Cir. 2002). And as Plaintiff has already alleged, Defendants *did* provide medical treatment, including seeing Defendant Vander Hey-Wright and receiving a blood test. For Plaintiff to allege the objective component for a cognizable claim of deliberate indifference, he must allege an actual deprivation of medical care and more than just dissatisfactory medical attention.

As for the subjective prong, Plaintiff does not allege when exactly Defendants knew—and disregarded—that "an excessive risk to [his] health or safety" existed. *Lyerly v. Phillips*, No. 04 Civ. 3904 (PKC), 2005 WL 1802972 (July 29, 2005), at *5 (quoting Farmer, 511 U.S. 825, at 837). Indeed, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* And while Plaintiff' claims—that he suffered a stroke and an infection that "set into" his heart—are undoubtedly serious, his bare allegations do not adequately allege that Defendants knew of, and subsequently disregarded, a substantial risk to Plaintiff so as to be deliberately indifferent to his medical needs.

## IV.    Defendant Vander Hey-Wright is Entitled to Absolute Immunity

Even if he can bring his claims under *Bivens*, Plaintiff's claims against Defendant Vander Hey-Wright cannot proceed because, as an employee of the PHS, federal law entitles her to absolute immunity from civil suit. Courts have routinely held that 42 U.S.C. § 233 extends absolute immunity to "PHS officers and employees for actions arising out of the performance of medical

or related functions within the scope of their employment." *Hui v. Castaneda*, 559 U.S. 799, 806 (2010); *see also, Cuoco v. Moritsugu,* 222 F.3d 99, 108 (2d Cir. 2000) (§ 233(a) "protects commissioned officers or employees of the [PHS] from being subject to suit while performing medical and similar functions"); *Rivera v. Fed. Bureau of Prisons*, 368 F. Supp. 3d 741, 745 (S.D.N.Y. 2019) (finding defendant, a PHS officer at the time of relevant events, immune from Bivens suit). Defendant Vander Hey-Wright is a Certified Physician Assistant and an officer with the PHS. Declaration of Glendolynn Johnson, dated September 4, 2025, ¶¶ 3–4.

Because Defendant Vander Hey-Wright's actions towards Plaintiff were within the scope of her role as a PHS officer and were "related to the provision of medical services," she is entitled to absolutely immunity from Plaintiff's *Bivens* claims, *Rivera*, 368 F. Supp. 3d at 745, and the claims should be dismissed.

## CONCLUSION

For the reasons set forth above, the Complaint should be dismissed in its entirety.

Dated:    New York, New York
          September 5, 2025

Respectfully submitted,

JAY CLAYTON
United States Attorney

By:    */s/ Adam Gitlin*
       ADAM GITLIN
       86 Chambers Street, Third Floor
       New York, New York 10007
       Tel.: (212) 637-2734
       adam.gitlin@usdoj.gov

## CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies that excluding the caption, table of authorities, signature block, and this certification, this memorandum contains 5,555 words calculated using Microsoft Word, which complies with Local Civil Rule 7.1(c).

*/s/ Adam Gitlin*
Assistant United States Attorney