THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VITO GALLICCHIO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 7:24-cv-08135 (PMH) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR COMPENSATORY DAMAGES

Plaintiff, Vito Gallicchio ("Gallicchio"), for his First Amended Complaint against Defendant United States of America ("United States" or "Defendant"), alleges as follows:

I.   PARTIES

1.   Gallicchio is an individual who was incarcerated at FCI Otisville at all times relevant to this Complaint. He is a resident of the State of New York.

2.     Defendant UNITED STATES OF AMERICA is the only proper defendant for claims brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671–2680.

3.     To the extent any Bureau of Prisons ("BOP") employees are referenced in this pleading, they are referenced solely as employees/agents of the United States acting within the scope of their employment, and not as defendants.

## II.   JURISDICTION AND VENUE

4.     This is an action for money damages against the United States of America under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671–2680, for personal injuries caused by the negligent or wrongful acts and/or omissions of employees of the Federal Bureau of Prisons ("BOP") acting within the scope of their employment.

5.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1346(b)(1).

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1402(b) because the acts and/or omissions giving rise to the claims occurred within the Southern District of New York.

7.     Plaintiff has satisfied the FTCA's administrative presentment requirement, 28 U.S.C. § 2675(a), by presenting a written claim to the BOP that included a sum-certain demand. More than six (6) months have elapsed without final agency disposition; accordingly, Plaintiff's claim may be treated as finally denied pursuant to 28 U.S.C. § 2675(a).

## III.   FACTUAL HISTORY

8.     On October 3, 2023, Gallicchio submitted an administrative claim under the FTCA by placing a signed Federal Tort Claims Act Administrative Claim Form 95 ("SF-95" or "Form 95") in the prison mail system for delivery to the BOP Northeast Regional Office. The Form

95 included a description of the loss, the date of loss, and a sum-certain demand. On October 31, 2023, Gallicchio mailed a letter to the BOP Northeast Regional Office with a copy of his Form 95 requesting a status update because he had not received any acknowledgement from the BOP of his administrative claim. In May 2024, Gallicchio mailed a second letter to the BOP Northeast Regional Office, again requesting the status of his administrative claim. None of his requests were responded to. More than six (6) months have elapsed since presentment of his administrative claim, and the BOP has not issued a final written denial. Accordingly, the claim is deemed denied.

9.    Upon admission into the BOP, Gallicchio advised agents of Defendant United States that he previously had medical issues with his heart.

10.    Starting in November 2022, while at FCI Otisville, Gallicchio began to show symptoms of a serious medical condition. He told the unit officer that he felt terrible, had chills, loss of appetite, and fatigue. The unit officer called the Health Services Unit ("HSU") and informed the prison medical staff that Gallicchio was really pale and advised them of his reported symptoms. The unit officer told the HSU staff member that Gallicchio "really looked bad."

11.    Gallicchio reported to HSU and was seen by P.A. Jayne VanderHey-Wright, who took his vitals and then dismissed him back to his housing unit, stating that he "looked fine."

12.    Between December 2022 and early January 2023, Gallicchio repeatedly complained to the unit officer about his symptoms, which had worsened. He reported to HSU and advised the medical staff of the same, and then was returned to his unit without any additional medical treatment. P.A. VanderHey-Wright maintained the position that Gallicchio was in "good health."

13.    By the end of January 2023, Gallicchio's weight loss had accelerated; he was constantly short of breath and exhausted. He submitted multiple complaints of his symptoms to HSU, but his complaints were ignored.

14.    In February 2023, Gallicchio was so ill that the unit officer ordered two other inmates to help him walk to HSU. Gallicchio was seen by EMT Jake Knibbs. For the prior week, Gallicchio had been slurring his words and was generally incoherent. Knibbs immediately assumed Gallicchio was intoxicated and administered two separate sobriety tests. Both tests were negative for alcohol consumption. Due to Gallicchio's slurred speech and incoherent state, Knibbs assumed Gallicchio had ingested some form of illicit substance and had him placed in punitive solitary confinement in the Segregated Housing Unit ("SHU"). Knibbs charged Gallicchio with ingesting an illicit substance. The only documented treatment provided by Knibbs was "counseling" on "hand and respiratory hygiene."

15.    While in the SHU for almost two months, Gallicchio's health worsened. He submitted multiple sick-call requests to prison officials, advising them of his weight loss, fever with chills, shortness of breath, and painful areas on his fingers, arms, and toes. Other than ridiculing Gallicchio for being a "drug addict," the staff ignored his pleas for medical treatment. During this approximately two-month SHU confinement, Gallicchio lost a remarkable 50 pounds.

16.    At one point, Knibbs stopped by Gallicchio's SHU cell. When Gallicchio advised that he had lost a large amount of weight, had blood in his urine, was suffering from blurry vision and dizziness, and was in severe pain, Knibbs dismissed these alarming symptoms and simply said that "it's common to lose weight in the SHU."

17.    Shortly after the dismissal of his concerns by Knibbs, as Gallicchio was returning from a shower, he felt tremendously dizzy and weak. He passed out and, while unconscious, was taken to an outside hospital.

18.    The medical staff at the external hospital performed multiple diagnostic exams. Testing established that a blood infection had eaten away the mitral valve in Gallicchio's heart, and that his slurred speech and other symptoms were signs of a stroke that had been mismanaged. On April 11, 2023, Gallicchio underwent open-chest surgery in which a cardiac surgeon performed a mitral valve replacement and bypass surgery.

19.    After the surgery, the cardiologist told Gallicchio that the prison waited too long to diagnose the infection and that, had they waited any longer, Gallicchio would have died.

20.    Gallicchio spent approximately two months in an outside hospital recuperating from the life-changing surgery.

21.    Upon his return from the months-long hospital stay, the prison warden, J.L. Jamison, callously made light of Gallicchio's near-death experience and blamed him for costing the prison $2 million.

22.    After his return, when Gallicchio saw Knibbs, Knibbs profusely apologized for his failure to properly diagnose the serious medical condition. Despite this episode, Knibbs was promoted by the BOP to a supervisory position.

IV.    CLAIMS FOR RELIEF (FTCA)

23.    Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

24.    At all times relevant, the acts and omissions described herein were committed by employees and/or agents of the Bureau of Prisons ("BOP") acting within the scope of their federal employment. Accordingly, the United States is liable to Plaintiff for those acts and omissions to the same extent as a private person would be liable under the law of the State of New York, pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1) and §§ 2671–2680.

Claim No. 1 – Negligence (FTCA / New York Law)

25.    The United States, through the BOP and its staff, owed Gallicchio a duty to exercise reasonable care under the circumstances, including reasonable care in responding to

serious medical complaints, arranging timely evaluation, and obtaining appropriate diagnostic testing and treatment when symptoms indicated an urgent or emergent medical condition.

26.    The United States breached its duty of reasonable care by, among other things, failing to appropriately assess and respond to Gallicchio's escalating symptoms; failing to ensure timely medical evaluation and diagnostic testing; ignoring repeated complaints of severe and worsening symptoms; and otherwise delaying necessary medical care under circumstances where a reasonable provider and/or custodial agency would have acted promptly.

27.    As a direct and proximate result of the foregoing negligence, Gallicchio suffered severe physical injury and pain and suffering, including but not limited to progression of a serious blood infection, stroke-related symptoms, destruction of the mitral valve, and the need for major cardiac surgery, as well as related complications, emotional distress, and other damages.

Claim No. 2 – Medical Malpractice / Professional Negligence (FTCA / New York Law)

28.    Plaintiff repeats and realleges paragraphs 1 through 27 as if fully set forth herein.

29.    The United States, through BOP medical providers and staff, undertook to provide medical evaluation and treatment to Gallicchio and therefore owed him a duty to render care and treatment in accordance with accepted standards of medical practice.

30.    The United States breached accepted standards of medical practice by, among other things, failing to timely and properly evaluate Gallicchio's symptoms; failing to timely order and/or obtain appropriate diagnostic testing; failing to timely diagnose and treat an evolving blood infection and stroke-like symptoms; and failing to provide medically appropriate intervention before his condition became critical.

31.    As a direct and proximate result of this medical malpractice/professional negligence, Gallicchio sustained serious and permanent injuries, endured significant pain and suffering, required emergency outside hospitalization and major open-chest cardiac surgery, and continues to suffer damages, including physical injury, emotional distress, and other losses.

V.    RELIEF REQUESTED

32.    WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against Defendant United States of America for compensatory damages, together with such other and further relief as the Court deems just and proper.

Dated: December 18, 2025

New York, New York

Respectfully submitted,

LAW OFFICES OF FLORENCE D. ZABOKRITSKY

By: /s/ Florence D. Zabokritsky

FLORENCE D. ZABOKRITSKY

Law Offices of Florence D. Zabokritsky
102-02 Metropolitan Ave.

Forest Hills, NY 11375

Phone: (347) 480-8844

Email: fz@fzlitigation.com

Attorney for Plaintiff Vito Gallicchio